UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: AMAZON.COM, INC., <br> FULFILLMENT CENTER FAIR LABOR <br> STANDARDS ACT (FLSA) AND <br> WAGE AND HOUR LITIGATION | Master File No. 3:14-md-2504 <br> MDL Docket No. 2504 |
| THIS DOCUMENT RELATES TO: <br> *Busk v. Integrity Staffing Solutions, Inc.*, | Case No. 3:14-cv-139-DJH |

\* \* \* \* \*

## ORDER

The Court previously granted preliminary approval of the parties' class-action settlement and incentive payments to class representatives; conditionally certified the class for settlement purposes; appointed class counsel and the claims administrator; and approved the notice and claim form to be sent to class members. (Docket No. 130) In an unopposed motion, the plaintiffs now seek final approval of attorney fees and incentive payments, as well as final approval of the settlement, certification of the class for settlement purposes, and payment to the claims administrator. (D.N. 131) There have been no objections to the settlement and very few opt-outs. The Court held a final fairness hearing on May 25, 2021, and heard from the parties in support of the settlement. (D.N. 134) For the reasons set forth below, the Court will grant the plaintiffs' motion for final approval.

**I.**

This case, like others in this MDL, involves claims that employees of Amazon and staffing agencies used by Amazon were required to undergo security checks for which they were not compensated. The facts of the case are set out in prior orders. (*See, e.g.*, D.N. 130, PageID # 1525-26)

In its February 25, 2021 Order, the Court conditionally certified the following class for settlement purposes:

> All persons employed directly by Defendants as hourly paid warehouse employees who worked at Amazon warehouses in the state of Nevada at any time from October 22, 2007 to April 3, 2020.

(*Id.*, PageID # 1534)  Notice was sent to 42,253 class members; as of May 24, 2021, the claims administrator had received responses from 4,276 class members, with 4,189 of those submitting claims.  (D.N. 133, PageID # 1702; D.N. 131-2, PageID # 1564)

The total maximum settlement amount under the parties' agreement is $13,500,000.  (D.N. 127-2, PageID # 1456)  That sum includes payments to individual class members who submitted claims; attorney fees and costs; incentive payments to the named plaintiffs; and fees for administration of the settlement.  (*Id.*)  Any class member who did not timely request exclusion from the class will release claims against the defendants arising out of the allegations made in this case.  (*Id.*, PageID # 1466)

## II.

Much of the final analysis is the same as at the preliminary stage, though the Court now has some additional information before it.

**A.     Approval of Settlement**

Pursuant to Federal Rule of Civil Procedure 23, the Court may approve a class-action settlement "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" based on the following factors:

> (A)   the class representatives and class counsel have adequately represented the class;
> (B)   the proposal was negotiated at arm's length;
> (C)   the relief provided for the class is adequate, taking into account:
>       (i)   the costs, risks, and delay of trial and appeal;

>       (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>       (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>       (iv)   any agreement required to be identified under Rule 23(e)(3); and
>   (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The rule largely encompasses the factors that have been employed by the Sixth Circuit:

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Doe v. Déjà vu Consulting, Inc.*, 925 F.3d 886, 894-95 (6th Cir. 2019) (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition to the seven factors listed above, the Sixth Circuit "ha[s] also looked to whether the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 755 (6th Cir. 2013) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 (6th Cir. 1983)).

The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). Since the amendment, courts within the Sixth Circuit have been applying both sets of factors. *See, e.g.*, *Elliott v. LVNV Funding, LLC*, No. 3:16-cv-00675-RGJ, 2019 U.S. Dist. LEXIS 143692, at *18 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 U.S. Dist. LEXIS 11826 (E.D. Ky. July 17, 2019)). In light of the substantial overlap between the two sets, they can easily be considered together.

1. **Adequate Representation/Amount of Discovery/Counsel and Representatives' Opinions/Reaction of Absent Class Members**

This case has been litigated for more than ten years with discovery throughout, and counsel on both sides have extensive experience in similar cases. In light of these factors, the opinions of counsel and the class representatives, all of whom favor the settlement, support final approval. *See Doe*, 925 F.3d at 899. The relatively high response rate (approximately ten percent of class members who received notice), the absence of any objections to the settlement, and the small number of requests for exclusion (approximately 0.02 percent) likewise support approval. *See id.*

2. **Arm's-Length Negotiations/Risk of Fraud or Collusion**

The procedural posture of the litigation indicates that the parties' settlement is the result of "a truly adversarial bargaining" process. *Newberg on Class Actions* § 13:50 (5th ed. 2020). This case has been pending for more than a decade, with significant adversarial motion practice and discovery during that time. It has been to the Supreme Court and back, and more recently to the Sixth Circuit and back. And the fact that the settlement was reached following mediation strongly suggests an absence of collusion. *See id.* at § 13:50 (noting that "there appears to be no better evidence of" a truly adversarial process "than the presence of a neutral third party mediator"). Thus, these factors also weigh in favor of approval.

3. **Adequacy of Relief**

   a. **Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits**

The parties have already invested significant time and money in this litigation, at significant risk. Proceeding to trial would entail further risk and expense, with the outcome uncertain—regardless of the strength of their claims, Plaintiffs could fail at the certification stage, while Defendants could face even greater exposure if the case were to proceed.

### b. Method of Distribution

Any class member who submitted a timely, complete claim form will be mailed a check in the amount of that class member's settlement award. (D.N. 127-2, PageID # 1457-58, 1463) The claim form was simple and straightforward and did not require any documentation from class members. (*Id.*, PageID # 1483) Of the 42,253 notices mailed, only 820—i.e., less than two percent—were ultimately deemed undeliverable. (*See* D.N. 133, PageID # 1702; D.N. 131-2, PageID # 1564) Slightly more than thirty-one percent of the Net Settlement Fund has been claimed, with an average settlement amount of $641.73. (D.N. 133, PageID # 1703) Although the response rate (approximately ten percent) may seem low, it is not atypical; the reality is that "most class members will never step forward and file claims for relief in most class actions." *Newberg on Class Actions* § 12:17; *see also Gascho v. Global Fitness Holdings, LLC*, 822 F.3d 269, 290 (6th Cir. 2016) (noting testimony of claims administrator that "response rates in class actions generally range from 1 to 12 percent, with a median response rate of 5 to 8 percent"). "Where, as here, the [d]efendant 'engaged in customary and court approved notice procedure, the response rate [is] not determinative of the adequacy of the class notice.'" *In re Packaged Ice Antitrust Litig.*, 322 F.R.D. 276, 291 (E.D. Mich. 2017) (quoting *In re Serzone Prods. Liab. Litig.*, 231 F.R.D. 221, 235-36 (S.D. W. Va. 2005)). Nothing about the method of distribution in this case appears designed to prevent class members from receiving payment.

### c. Attorney Fees

The parties' agreement provides for attorney fees of up to $4,500,000 and up to $150,000 in costs. (D.N. 127-2, PageID # 1461) Class counsel request only $143.331.33 in costs, with the remainder to be reallocated to the Net Settlement Fund for distribution to the class. (D.N. 131-1, PageID # 1560) They seek the full $4,500,000 in fees. (*See* D.N. 131-7, PageID # 1698)

The Sixth Circuit recognizes two methods for calculating attorney fees: the lodestar method and the percentage-of-the-fund method. *Gascho*, 822 F.3d at 279. The Court "ha[s] the discretion to select the particular method of calculation, but must articulate the 'reasons for "adopting a particular methodology and the factors considered in arriving at the fee."'" *Id.* at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The percentage method is generally preferred in common-fund cases. *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

The percentage-of-the-fund method is straightforward and consistent with the fee arrangement between Plaintiffs and class counsel (*see* D.N. 131-6, PageID # 1589); it also "more accurately reflects the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516). Moreover, the concern that "a percentage award may . . . provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested" is not present here given that counsel have already invested more than a decade in this litigation. *Id.* (quoting *Rawlings*, 9 F.3d at 516). The Court will therefore apply the percentage-of-the-fund method in this case.

The Sixth Circuit has identified six factors relevant to the attorney-fee inquiry:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Id.* at 280 (quoting *Moulton*, 581 F.3d at 352). These factors support approval of class counsel's requested fee. First, the value of the benefit to class members is substantial: class members who submitted timely claims will receive several hundred dollars on average; some will receive several

thousand. Class counsel—who along with defense counsel have extensive experience in this type of litigation—provided their services on a contingent basis. (D.N. 131-6, PageID # 1589) The case is complex, and society has a strong interest in rewarding attorneys who take such cases and "achieve a result that the individual class members probably could not obtain on their own," particularly in the wage-and-hour context. *Estate of McConnell v. EUBA Corp.*, No. 3:18-cv-00355, 2021 U.S. Dist. LEXIS 92836, at *18 (S.D. Ohio May 17, 2021).

The value of class counsel's services on an hourly basis likewise favors approval of the requested fee award. Class counsel submitted documentation showing a lodestar amount of $1,934,909.50. (D.N. 131-6, PageID # 1589-90) The resulting "multiplier" is 2.3, which is well within the reasonable range, particularly given the significant risk and expense undertaken and "public benefit achieved" by class counsel. *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516); *see also Ipema v. Georgian Villa Inc.*, No. 83-3059, 1984 U.S. App. LEXIS 14255, at *10 (6th Cir. May 16, 1984) (reversing and remanding for increase in attorney fees to limit provided in parties' agreement after finding "that counsel is entitled to some multiplier to adjust the lodestar figure because of the contingent nature of their fees"); *Estate of McConnell*, 2021 U.S. Dist. LEXIS 92836, at *20 (citations omitted) (finding multiplier of 2.9 to be "within the acceptable range" and noting that a multiplier is particularly necessary "in wage cases . . . , which are inherently complex, difficult, and expensive to litigate").

Finally, the percentage sought is not unreasonable. The proposed fee award in this case represents one third of the total settlement amount. (*See* D.N. 127-2, PageID # 1456, 1461) Fee awards of thirty-three percent are frequently approved in complex wage-and-hour cases. *See, e.g.*, *Jones v. H&J Rests., LLC*, No. 5:19-CV-105-TBR, 2020 U.S. Dist. LEXIS 219071, at *17 (W.D.

Ky. Nov. 23, 2020) (citations omitted). In light of circuit precedent, the proposed fee award is reasonable.

### d. Other Agreements

The settlement agreement states that it "contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein." (D.N. 127-2, PageID # 1471) The named plaintiffs also represent that they "have not entered into any undisclosed agreements" or "received any undisclosed compensation in this case." (D.N. 131-3, PageID # 1577; D.N. 131-4, PageID # 1580; D.N. 131-5, PageID # 1583)

### 4. Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiffs

The settlement agreement provides for "service awards" to the named plaintiffs: $20,000 to Jesse Busk, the original plaintiff; and $15,000 each to Laurie Castro, Sierra Williams, and Monica Williams, who were added to the case by amended complaint. (D.N. 127-2, PageID # 1450, 1459; *see* D.N. 131-1, PageID # 1553) However, class counsel are not seeking a payment for Castro at the final-approval stage because she "has not remained in contact with Class Counsel and has not provided a declaration in support for her service award, as required by this Court." (D.N. 131-1, PageID # 1552) Class counsel therefore request that the $15,000 allocated for Castro "be reallocated to the Net Settlement Fund and distributed to Class Members accordingly." (*Id.*)

An incentive payment generally "does not raise a red flag" in the settlement-approval inquiry "because the class representative and class member are not similarly situated in regard to . . . the incentive payment: the class representative did extra work and took extra risk to earn that." *Newberg on Class Actions* § 13:56. However, requests for incentive awards are "scrutinized

carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

Here, the three remaining named plaintiffs have each submitted documentation of their time spent on the litigation, which included assisting class counsel, participating in mediation, and reviewing the proposed settlement. (D.N. 131-3 (Busk affidavit); D.N. 131-4 (M. Williams affidavit); D.N. 131-5 (S. Williams affidavit)) Busk also dealt with publicity and news interviews surrounding the Supreme Court's consideration of the case. (D.N. 131-3, PageID # 1575-76) And all three representatives assumed the risk that their participation in this lawsuit would affect future employment opportunities, as well as potential liability for the defendants' costs if the litigation were unsuccessful. (D.N. 131-3, PageID # 1576-77; D.N. 131-4, PageID # 1580; D.N. 131-5, PageID # 1583)

While the incentive amounts are significant, they are not excessive per se. *See, e.g.*, *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (collecting cases). Moreover, the relief to unnamed class members will not be "perfunctory," *Vassalle*, 708 F.3d at 755, but based on the number of shifts they worked during the relevant time period. Because the payments are reasonable and are supported by documentation, they will be approved.

    **5.**    **Public Interest**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). This final factor therefore also supports approval.

**B.       Certification for Settlement Purposes**

The Court previously granted conditional certification for settlement purposes. (D.N. 130, PageID # 1531-34) There is no indication that any of the factors supporting certification have changed since that ruling; thus, certification for settlement purposes is appropriate. *See* Fed. R. Civ. P. 23(a), (b)(3).

**C.       Notice to Class Members**

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the form and contents of the notice (D.N. 130, PageID # 1533) and directed that it be sent to class members via first-class mail. (*Id.*, PageID # 1534) The notice process appears to have been successful, as ninety-eight percent of class members received notice. (*See* D.N. 133, PageID # 1702; D.N. 131-2, PageID # 1564) The Court therefore finds the notice procedure fair, reasonable, and adequate.

**D.       Payment to Claims Administrator**

Based on the affidavits submitted by Simpluris representative Mary Butler, the claims administrator has performed its duties in accordance with the settlement agreement and the Court's prior order. (D.N. 133; D.N. 131-2; *see* D.N. 130, PageID # 1535) The payment to Simpluris will therefore also be approved.

**III.**

In sum, the Court finds the parties' settlement to be fair, reasonable, and adequate. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)       Plaintiffs' unopposed motion for final approval (D.N. 131) is **GRANTED**.

(2)     The Court adopts the defined terms in the Settlement Agreement.

(3)     The following class is certified for settlement purposes only:

All persons employed directly by Defendants as hourly paid warehouse employees who worked at Amazon warehouses in the state of Nevada at any time from October 22, 2007 to April 3, 2020.

(4)     The Court confirms the appointment of Jesse Busk, Sierra Williams, and Monica Williams as Class Representatives and the Service Award payments in the amounts as set forth in the Settlement Agreement and as follows: (1) $20,000 to original Plaintiff Jesse Busk, and (2) $15,000 to each later added plaintiff, Sierra Williams and Monica Williams. Plaintiff Laurie Castro is not confirmed as a Class Representative because she failed to comply with this Court's Order to submit a declaration in support of a Service Award. Castro therefore is not awarded a separate Service Award under the Settlement.

(5)     The Court confirms the appointment of Thierman Buck LLP as Class Counsel for the settlement class and approves their requests for attorney fees and litigation costs of $4,500,000 and $143,331.33, respectively. As to litigation costs, the difference between the initial amount requested ($150,000) and the actual amount awarded ($143,331.33) shall be reallocated to the Net Settlement Fund for distribution to the Class.

(6)     The Court finds that as of the date of this Order, each and every class member who did not submit a timely and valid request for exclusion has waived and released claims as set forth in the Settlement Agreement and Notice of Class Action Settlement.

(7)     The Court finds that the settlement administrator Simpluris Inc. is entitled to $130,000 for settlement administration.

(8) The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

(9) This matter is **DISMISSED** with prejudice and **STRICKEN** from the Court's active docket. The Court retains jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund.

July 22, 2021

David J. Hale, Judge
United States District Court